## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2015-CA-00107-COA

NATHAN SINKO A/K/A NATHAN C. SINKO          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2014 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM WAIDE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD ANTHONY LOUIS SCHMIDT JR. |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST-CONVICTION RELIEF DENIED |
| DISPOSITION: | REVERSED AND RENDERED - 04/12/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     In May 2012, Nathan Sinko pled guilty to manufacturing and possessing methamphetamine. Under the statutes in effect at the time of Sinko's plea and sentencing, his conviction for manufacturing a controlled substance other than marijuana rendered him ineligible for parole. Indeed, this Court made this point clear in *McGovern v. Miss. Department of Corrections*, 89 So. 3d 69 (Miss. Ct. App. 2011). Nonetheless, for reasons that have not been explained, prior to and continuing well after *McGovern*, the Mississippi Department of Corrections (MDOC) classified Sinko and other offenders convicted of

manufacturing or selling a controlled substance other than marijuana as parole eligible. Accordingly, MDOC continued to assign parole eligibility dates to these offenders, and the Parole Board continued to grant them parole. It appears that this continued for at least two and a half years after the *McGovern* decision. Thus, when Sinko entered MDOC custody in 2012, MDOC gave him a parole eligibility date, which was adjusted over time. In July 2014, Sinko received an "Action of the Parole Board," dated July 8, 2014, that indicated that he would be paroled on September 22, 2014. However, before he was paroled, MDOC informed Sinko that he was not eligible for parole, apparently because MDOC was attempting to comply, belatedly, with the statutes that this Court interpreted in *McGovern*. Sinko challenged MDOC's determination by filing a motion for post-conviction relief (PCR) in circuit court. After the circuit court denied his motion, he appealed.

¶2. On appeal, Sinko argues that legislation enacted in 2014 made him eligible for parole, even though the statutes in effect at the time of his plea and sentencing provided that he was ineligible. Sinko also argues that by depriving him of parole eligibility based on an "arbitrarily selected 'cut-off date,'" MDOC violated his rights under the Equal Protection Clause and the Due Process Clause. Finally, Sinko argues that his 2011 guilty plea was involuntary because the court did not inform him that he would be ineligible for parole. For the reasons discussed below, we conclude that based on the changes to the law effective July 1, 2014, Sinko's conviction for manufacturing methamphetamine does not render him ineligible for parole. We do not hold that Sinko is entitled to be paroled; that is a decision for the Parole Board. We hold only that his conviction for manufacturing methamphetamine

2

does not render him ineligible. Because we decide the case on statutory grounds, we do not address Sinko's constitutional claims.

## FACTS AND PROCEDURAL HISTORY

¶3.     In July 2011, the Oktibbeha County grand jury returned a three-count indictment charging Sinko with manufacturing methamphetamine in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2009) (Count I); possessing more than thirty grams of methamphetamine in violation of section 41-29-139 (Count II); and generating waste in connection with the manufacturing of methamphetamine in violation of Mississippi Code Annotated section 49-17-603 (Supp. 2011) (Count III). On May 2, 2012, Sinko pled guilty to Count I and Count II. In exchange, the State dropped Count III.

¶4.     At Sinko's plea hearing, the circuit judge questioned Sinko thoroughly and found that his plea was knowing and voluntary. As the factual basis for the plea, the State reported that in March 2011 Sinko's father-in-law alerted the sheriff's department that Sinko was operating a meth lab in a shed behind Sinko's home. Deputies investigated and found Sinko in possession of a cooler with several bottles "found to have a mixture of things in the middle of a methamphetamine cook." Nine bottles submitted to the crime lab were found to contain a total of 172.1 grams of methamphetamine.[1] On Count I, the court sentenced Sinko to

---

[1] At Sinko's sentencing hearing, his attorney suggested that this overstated the amount of methamphetamine involved because the bottles did not contain "finished product" but rather "a large quantity of . . . liquid that had some methamphetamine characteristics to it." A factual basis regarding the weight of the methamphetamine was necessary because Count II required proof that Sinko possessed more than thirty grams of methamphetamine. *See* Miss. Code Ann. § 41-29-139(c)(1)(D). With respect to Count I, the law in effect at the time Sinko pled guilty did not require proof of the amount of methamphetamine that Sinko had *manufactured*. As discussed below, section 41-29-139(b) was amended effective July 1,

twelve years in MDOC custody, a $5,000 fine, and five years of post-release supervision. On Count II, the court sentenced him to twelve years in MDOC custody and a $5,000 fine, with the sentence to run concurrently to the sentence on Count I.

¶5. On September 23, 2014, Sinko filed a pro se PCR motion. Sinko alleged that he pled guilty with the understanding that he would be eligible for parole, and that he was given and had always had a parole eligibility date "up to a few weeks ago," but that his "parole date [had been] taken away." Sinko asked the court to "ORDER [his] parole date to be placed back or allow [him] any type of [PCR]."

¶6. Sinko subsequently obtained counsel, and on November 13, 2014, he filed a new PCR motion. In his new PCR motion, Sinko alleged that he had been "set to be released [on September 22, 2014,] after being granted parole on July 8, 2014." In support, Sinko submitted an "Action of the Parole Board" that appears to reflect a decision of the Parole Board to that effect. Sinko also submitted MDOC "Inmate Time Sheets" that he received in 2012, 2013, and 2014, each reflecting a parole eligibility date. Sinko alleged that sometime after July 8, 2014, but before he was paroled, MDOC informed him that he was ineligible for parole under Mississippi Code Annotated section 47-7-3, as interpreted in *McGovern*, *supra*. Sinko alleged that until MDOC abruptly declared him ineligible for parole, similarly situated offenders had been deemed parole eligible and paroled as a result of MDOC's prior "misinterpretation of the law." Sinko alleged that MDOC's decision to correct its "misinterpretation" effective on an arbitrary "'cut-off' date" violated his rights to equal

_____

2014. Under current law, the applicable sentencing range is dependent on the amount of drugs that the defendant manufactured.

protection and due process. Sinko asked the court "to set[] his sentence aside" and "sentence him to time served."

¶7. On December 8, 2014, the circuit judge dismissed Sinko's PCR petition. The court ruled that it was without jurisdiction to reconsider or amend Sinko's sentence and that Sinko "failed to establish any claim which would warrant [PCR]." Sinko filed a timely notice of appeal.

## DISCUSSION

¶8. As stated in the introduction to this opinion, we conclude that based on statutory amendments that went into effect on July 1, 2014, Sinko's conviction for manufacturing methamphetamine does not render him ineligible for parole. However, in the circuit court, Sinko failed to make this argument and failed to request appropriate relief. Accordingly, we must first consider whether the issue is properly before this Court.

**I.      Whether Sinko's claim that he is eligible for parole is properly before this Court.**

¶9. In his first issue on appeal, Sinko argues that a PCR motion is a proper vehicle to challenge MDOC's determination that he is ineligible for parole. The State agrees with him, and we do too. *See Keys v. State*, 67 So. 3d 758, 759-60 (¶¶6-9) (Miss. 2011) (holding that a PCR motion is a proper vehicle for challenging a parole-eligibility determination).

¶10. A more difficult procedural issue is that Sinko's claim that he is eligible for parole plainly does not entitle him to the relief that he requested in the second or amended PCR motion that he filed in the circuit court, which was to have his sentence set aside and to be

5

re-sentenced to time served.[2] Moreover, in the circuit court Sinko did not raise the statutory argument that he now advances on appeal. At oral argument, Sinko's appellate counsel, who is not the same attorney who represented him in the circuit court, candidly conceded these points. He acknowledged that the "proper relief was not requested" in the circuit court and that this Court "certainly" could affirm for that reason alone.

¶11. This is a problem for Sinko because a "trial judge cannot be put in error on a matter which was not presented to him for decision." *Green v. State*, 183 So. 3d 28, 30-31 n.1 (Miss. 2016) (quoting *Holmes v. State*, 798 So. 2d 533, 534 (¶16) (Miss. 2001)).[3] The only matter presented to the circuit judge for decision in this case was whether Sinko was entitled to have his sentence set aside and to be re-sentenced to time served on constitutional grounds. The circuit judge committed no error by ruling that he was not.

¶12. By failing to raise certain issues and request the proper relief in the circuit court, Sinko clearly waived the right to raise those issues on appeal. But Sinko's waiver does not deprive this Court of jurisdiction or discretion to decide those issues. On appeal, both Sinko and the State have briefed and ably argued the merits of the question whether he is eligible for parole as a result of statutory amendments that went into effect on July 1, 2014. On that issue, the record requires no further development. Moreover, the record suggests that if

---

[2] Although Sinko's pro se PCR motion lacked detail regarding the legal basis of his claim, his pro se filing did more appropriately seek reinstatement of his parole date or, in the alternative, "any type of [PCR]."

[3] In general, we will not disturb a denial or dismissal of a PCR motion unless the circuit court's decision was clearly erroneous. *Presley v. State*, 176 So. 3d 158, 160 (¶8) (Miss. Ct. App. 2015). However, we review questions of law de novo. *Id.*

Sinko's interpretation of the 2014 amendments is correct, he should have been released on parole over eighteen months ago. Under these circumstances, it would be unjust to require Sinko to start over in a new circuit court action or administrative proceeding. Moreover, the issue is an important one that deserves prompt resolution. At oral argument, the State agreed with Sinko that there will be "numerous other appeals raising this same issue," which appears to affect potentially hundreds of inmates. In the interest of judicial economy, we have discretion to address such issues on appeal even if they were waived and never properly presented to the trial court. *See, e.g., Tinnon v. Martin*, 716 So. 2d 604, 613-14 (¶¶52, 57-58) (Miss. 1998); *Fordice v. Bryan*, 651 So. 2d 998, 1001 (Miss. 1995); *State Hwy. Comm'n of Miss. v. McDonald's Corp.*, 509 So. 2d 856, 860, 863 (Miss. 1987). Accordingly, we will address Sinko's contention that he is eligible for parole notwithstanding his waiver.

**II. Whether Sinko's conviction for manufacturing methamphetamine renders him ineligible for parole.**

¶13. When Sinko pled guilty to manufacturing methamphetamine, he clearly was ineligible for parole under the relevant statutes as they read at the time. Mississippi Code Annotated section 47-7-3(h), which governs parole eligibility, then read, in relevant part, as follows:

> No person shall be eligible for parole who is convicted or whose suspended sentence is revoked after June 30, 1995, except that an offender convicted of only nonviolent crimes after June 30, 1995, may be eligible for parole if the offender meets the requirements in subsection (1) and this paragraph. . . . For purposes of this paragraph, "nonviolent crime" means a felony other than homicide, robbery, manslaughter, sex crimes, arson, burglary of an occupied dwelling, aggravated assault, kidnapping, felonious abuse of vulnerable adults, felonies with enhanced penalties, [or] ***the sale or manufacture of a controlled substance under the Uniform Controlled Substances Law . . . . An offender convicted of a violation under Section 41-29-139(a), not exceeding the amounts specified under Section 41-29-139(b), may be eligible for parole.***

7

In addition, an offender incarcerated for committing the crime of possession of a controlled substance under the Uniform Controlled Substances Law after July 1, 1995, shall be eligible for parole.

(Emphasis added). Section 41-29-139(a) is the provision of the Uniform Controlled Substances Law that makes it unlawful to sell or manufacture a controlled substance. At the time Sinko pled guilty and was sentenced, the *only* "amounts specified under Section 41-29-139(b)" were amounts of marijuana or synthetic marijuana.[4] Accordingly, any person convicted of manufacturing or selling a controlled substance other than marijuana was ineligible for parole. We specifically addressed this issue in *McGovern*, stating: "None of the provisions of section 41-29-139(b) pertain to selling an amount of a controlled substance other than marijuana. They do not apply to an offender convicted of selling amphetamines. Because McGovern is incarcerated for selling amphetamines, he is not eligible for parole." *McGovern*, 89 So. 3d at 72 (¶8); *accord Turner v. State*, 169 So. 3d 945, 948-49 (¶¶10-14) (Miss. Ct. App. 2014) (holding that a person convicted of selling cocaine was ineligible for parole).

¶14.    However, at the time *McGovern* was decided, MDOC apparently classified offenders convicted of selling and manufacturing all types of controlled substances—not just marijuana—as eligible for parole. Moreover, MDOC has acknowledged that even after the *McGovern* decision, it continued, erroneously, to deem such offenders parole eligible.[5] As

---

[4] This sentence authorizing parole for persons convicted of selling or manufacturing marijuana was added to section 47-7-3 effective July 1, 2008. *See* 2008 Miss. Laws ch. 438.

[5] In both *McGowan* and *Turner*, MDOC had classified the offender as ineligible for parole for other reasons. In both cases, this Court held that MDOC's reasons for denying parole eligibility were erroneous but that the offender was ineligible for parole because he

8

a result, MDOC continued to assign parole eligibility dates to offenders convicted of manufacturing or selling all types of controlled substances, and the Parole Board continued to parole these offenders. This policy continued until sometime after July 1, 2014, when, in an apparent attempt to comply with the law, MDOC conducted an "audit" to identify offenders, such as Sinko, who had been convicted of selling or manufacturing a controlled substance other than marijuana and who had been erroneously classified as eligible for parole and given parole eligibility dates.[6]

¶15.    During the 2014 legislative session, the Legislature enacted comprehensive criminal justice reform legislation, known as House Bill 585,[7] which amended numerous statutes related to parole and sentencing, including sections 47-7-3 and 41-29-139. These amendments went into effect on July 1, 2014. The above-quoted paragraph of section 47-7-3 (the parole eligibility statute) was re-designated as paragraph (f) with only one change to its text. The following sentence was added to the end of the paragraph: "This paragraph (f) shall

---

had been convicted of selling a controlled substance other than marijuana. *See Turner*, 169 So. 3d at 948-49 (¶¶11-13); *McGovern*, 89 So. 3d at 71-72 (¶¶7-8).

    [6] The audit may have been triggered by our decision in *Turner*, *supra*, which was handed down on July 15, 2014. Sinko moved to supplement the record on appeal with documents that allegedly show that more than 3,000 similarly situated offenders were paroled erroneously after January 1, 2011, and that over 800 such offenders were re-classified as ineligible for parole in connection with MDOC's audit. We denied Sinko's motion to take judicial notice of these documents, but the State does not dispute that many offenders were erroneously granted parole prior to the audit or that similarly situated offenders were re-classified as ineligible for parole after the audit.

    [7] 2014 Miss. Laws ch. 457 (hereinafter, "House Bill 585" or "H.B. 585").

not apply to persons convicted on or after July 1, 2014[.]" H.B. 585, § 40.[8] As amended, the paragraph continues to provide that "[a]n offender convicted of a violation under Section 41-29-139(a), not exceeding the amounts specified under Section 41-29-139(b), may be eligible for parole." *Id.*

¶16.    While there were no substantial changes to the relevant paragraph of section 47-7-3, significant amendments were made to section 41-29-139(b). *See* H.B. 585, § 37. Specifically, section 41-29-139(b) was amended to establish weight- and unit-based sentences *for all Schedule I, II, III, IV, and V drugs*. *See id.* Thus, in the language of section 47-7-3(f), there *are* now "amounts specified under Section 41-29-139(b)" for controlled substances other than marijuana, including methamphetamine.

¶17.    House Bill 585's amendments to section 41-29-139(b) give rise to the issue of statutory interpretation at the heart of this case. If we simply read the current versions of sections 47-3-7(f) and 41-29-139(b), then Sinko appears to be eligible for parole. He was convicted of a violation of section 41-29-139(a) for manufacturing methamphetamine. However, he was *not* convicted of manufacturing more than the amount specified in section 41-29-139(b). (He was not convicted of manufacturing *any* specific amount of methamphetamine. *See supra* n.1.) Therefore, Sinko appears to be eligible for parole under section 47-7-3(f). This is Sinko's basic argument.

¶18.    The State counters that it would be "absurd" to interpret the relevant statutes to grant parole eligibility to Sinko and other similarly situated offenders convicted prior to July 1,

---

[8] A new paragraph (g) applies to persons convicted after July 1, 2014.

2014. The State reasons as follows: Prior to July 1, 2014, the only "amounts specified" in section 41-29-139(b) were amounts of marijuana and synthetic marijuana. Therefore, in prosecutions for the sale or manufacture of other controlled substances, including Sinko's, proof of the amount sold or manufactured was unnecessary. *See supra* n.1. Accordingly, prior to July 1, 2014, "sentencing orders and indictments received by MDOC for offenders convicted of sale or manufacture of a controlled substance (other than marijuana) [did] not contain the actual amount of the controlled substance sold or manufactured." Thus, the State explains, for an offender convicted prior to July 1, 2014, MDOC cannot determine the amount of the controlled substance that the offender sold or manufactured. Therefore, the State argues that we must interpret section 47-7-3(f)'s seemingly straightforward reference to "the amounts specified under Section 41-29-139(b)" to mean "the amounts specified under Section 41-29-139(b) [*as it read prior to July 1, 2014*]."

¶19. "When construing the meaning of a statute, we must look at the words of the statute." *Caldwell v. N. Miss. Med. Ctr.*, 956 So. 2d 888, 890-91 (¶10) (Miss. 2007). When we do so, our "first question . . . is whether the statute is ambiguous. When a statute is unambiguous, this Court applies the plain meaning of the statute and refrains from the use of statutory construction principals [sic]." *Gilmer v. State*, 955 So. 2d 829, 833 (¶9) (Miss. 2007) (citation omitted). That is, when a statute's "language is plain, it will be enforced as written." *In re AB Jr.*, 663 So. 2d 580, 581 (Miss. 1995). In this case, there is nothing ambiguous about "the words" of section 47-7-3 or 41-29-139(b) or their interaction. The statutes' language is plain, and their meaning is straightforward: offenders convicted prior

11

to July 1, 2014, of selling or manufacturing controlled substances not exceeding the amounts specified in section 41-29-139(b) may be eligible for parole. Sinko is such an offender; therefore, in the absence of some other disqualification, he is eligible for parole under section 47-7-3(f).

¶20. The State relies on *Belk v. Bean*, 247 So. 2d 821, 828 (Miss. 1971), and *Hassett v. Welch*, 303 U.S. 303, 314 (1938), for the proposition that where one statute adopts the provisions of another statute by reference, the "adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications by the statute so taken unless it does so by express intent." *Hassett*, 303 U.S. at 314. However, the State's reliance on this infrequently invoked canon of construction is misplaced because the canon applies, at most, in cases in which "one section of a statute refers to another section *which alone is amended*." *Id.* (emphasis added); *see also Belk*, 247 So. 2d at 828 (explaining that although the adopted statute was amended, the adopting statute "was not amended"). That is not what occurred in House Bill 585. Here, *in the same bill*, the Legislature brought forward and amended *both* section 47-7-3(f) *and* section 41-29-139(b). "While the edit [to section 47-7-3(f)] may appear small it is sufficient to render the *Hassett* canon inapplicable because it demonstrates that [section 47-7-3(f)] did not escape [the Legislature's] notice at the time it amended [section 41-29-139(b)]." *New York ex rel. N.Y. State Office of Children & Family Servs. v. U.S. Dep't of Health & Human Servs. Admin. for Children & Families*, 556 F.3d 90, 99 (2d Cir. 2009) ("[T]he *Hassett* canon is not a categorical rule that compels courts to always read statutory cross-references as pointing to their original targets." (internal

12

quotations omitted)). Given that the Legislature deliberately amended *both* of the relevant statutes, it is logical to interpret the amended version of 47-7-3 to incorporate the amended version of 41-29-139(b).

¶21. There are also significant practical difficulties with the State's argument. Under the State's interpretation, parole eligibility determinations would require the reader to analyze a combination of old and new statutes. The reader would be expected to divine that section 47-7-3(f) incorporates by reference an old version of section 41-29-139(b), rather than the current version, even though nothing in the text of either provision so states. The State suggests that the reader should infer incorporation of the old version of section 41-29-139(b) because the Legislature amended section 47-7-3(f) to limit its application to offenders convicted before July 1, 2014. However, the final sentence of section 47-7-3(f) only describes the persons to whom it applies. There is no basis for us to conclude that the Legislature intended the sentence to serve as a vague and obscure clue that the reader must search out an old version of section 41-29-139(b). Rather, "[t]he Legislature is presumed to know of the statutes it is enacting and of the subject matter affected." *Seward v. Dogan*, 198 Miss. 419, 436, 21 So. 2d 292, 294 (1945).

¶22. Moreover, had the Legislature intended to enact the State's interpretation of section 47-7-3(f), it could have done so expressly with relative ease. That is, if the Legislature wanted to preclude parole for offenders convicted prior to July 1, 2014, of manufacturing or selling controlled substances other than marijuana, it could have tweaked section 47-7-3(f) to incorporate only subsections 41-29-139(b)*(1)-(2)*, which specify amounts of marijuana

13

only. However, the Legislature did not do so. Instead, in House Bill 585, the Legislature brought forward and re-enacted section 47-7-3's broader reference to section 41-29-139(b), which now specifies amounts of all controlled substances. Given that the Legislature passed on this opportunity to limit parole eligibility within this class of offenders, we are unwilling to write such a limitation in the statute. *Cf. Roberts v. Grisham*, 493 So. 2d 940, 942 (Miss. 1986) (declining to read into a statute an exception that "easily could have been included by the legislature if it had intended").

¶23.    Finally, we cannot agree with the State's argument that it would be "absurd" to authorize parole for Sinko and similarly situated offenders. As discussed above, for years MDOC deemed this very class of offenders, including Sinko himself, as eligible for parole. Moreover, in House Bill 585, the Legislature purposefully provided that persons convicted under 41-29-139(a) of manufacturing or selling methamphetamine and other controlled substances *after July 1, 2014*, would be eligible for parole. *See* Miss. Code Ann. §§ 41-29-139, 47-7-3(g), & 97-3-2. Thus, there is no dispute that, due to MDOC's misinterpretation of the law, similar offenders were deemed eligible for parole prior to July 2014; nor is there any dispute that the Legislature has determined that similar offenders should be eligible for parole going forward. Under these circumstances, it is not "absurd" to interpret House Bill 585 to extend parole eligibility to the otherwise similarly situated group stuck in the middle, i.e., Sinko and others re-classified as ineligible for parole as a result of MDOC's audit.

¶24.    Accordingly, we hold that Sinko's conviction for manufacturing methamphetamine does not make him ineligible for parole. Because we decide the appeal on statutory grounds,

we do not address Sinko's constitutional arguments. *See Warner-Lambert Co. v. Potts*, 909 So. 2d 1092, 1093 (¶3) (Miss. 2005) ("[A] constitutional question will be passed on where the issues involved in a particular case are such that the case may be decided on other grounds. . . . [W]hen there is no necessity to reach a [constitutional] question, we will not.").

## CONCLUSION

¶25.    The decision to grant parole does not rest with this Court. *See Lizana v. Miss. Dep't of Corr.*, 910 So. 2d 31, 34 (¶10) (Miss. Ct. App. 2005). Therefore, we hold only that Sinko's conviction for manufacturing methamphetamine does not render him ineligible for parole. *See Keys*, 67 So. 3d at 761 (¶¶12-13). Although the record on appeal is limited, that appears to have been the only reason that Sinko was deemed ineligible for parole in 2014. It also appears that by that time the Parole Board had already determined that Sinko should be paroled on September 22, 2014. Given that Sinko was scheduled to be paroled more than eighteen months ago, MDOC and the Parole Board are directed to act as expeditiously as possible to take any steps necessary to re-determine Sinko's eligibility for parole; assuming he is deemed eligible for parole, to issue a decision granting or denying parole; and if he is granted parole, to release him on parole. On this basis, we reverse and render.

¶26.    **THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR, JAMES AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**