# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00580-COA

**DENNIS LAWRENCE SMITH**                                      APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:                05/18/2020
TRIAL JUDGE:                     HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:       RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          TAMARRA AKIEA BOWIE
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: SCOTT STUART
NATURE OF THE CASE:              CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                     AFFIRMED - 09/28/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1. Following a guilty plea, Dennis Lawrence Smith was convicted and sentenced for three counts of selling cocaine as a subsequent drug offender. He later filed a motion for post-conviction relief (PCR). The circuit court denied the motion, and this Court affirmed. *Smith v. State*, 291 So. 3d 1 (Miss. Ct. App. 2019). Smith then filed a second PCR motion in which he alleged ineffective assistance by his plea counsel. The circuit court dismissed Smith's second motion based on the successive-motions bar and the statute of limitations of the Uniform Post-Conviction Collateral Relief Act (UPCCRA). We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In August 2013, a Rankin County grand jury returned a seven-count indictment

charging Smith with five counts of selling cocaine, one count of selling marijuana, and one count of possession of cocaine with the intent to distribute. He was indicted as a subsequent drug offender under Mississippi Code Annotated section 41-29-147 (Rev. 2018).

¶3. In November 2013, pursuant to a plea agreement, Smith pled guilty to three counts of selling cocaine as a subsequent drug offender (Counts I, III, and IV). The remaining counts of the indictment were nolle prosequied. During his plea hearing, Smith confirmed that he understood the minimum and maximum sentences for his offenses. Pursuant to Smith's plea agreement, the State recommended a sentence of sixty years in the custody of the Department of Corrections on each count, with fifty years to serve on Count I, one day to serve on Count III, one day to serve on Count IV, and five years of post-release supervision. The court imposed the recommended sentence. At the time Smith pled guilty, he was not eligible for parole because he pled guilty to selling a controlled substance other than marijuana and because he pled guilty as a subsequent drug offender.[1] However, under current law, Smith will be eligible for parole after he has served ten years of his sentence. *See* Miss. Code Ann. § 47-7-3(1)(h)(i)(3) (as amended by 2021 Miss. Laws ch. 479, § 2 (S.B. 2795)).

¶4. In 2016, Smith obtained new counsel and filed a PCR motion in which he alleged that his sentence was disproportionate to his offenses and amounted to cruel and unusual punishment. The circuit court denied Smith's motion, and this Court affirmed. *Smith*, 291 So. 3d at 3 (¶1). Following this Court's decision, Smith again hired a new lawyer and filed

---

[1] *See* Miss. Code Ann. § 47-7-3(1)(h) (Rev. 2011); *Parker v. Mallett*, 298 So. 3d 994, 998 (¶¶9-10) (Miss. 2020); *Whatley v. State*, 228 So. 3d 963, 964 (¶4) (Miss. Ct. App. 2017); *Sinko v. State*, 192 So. 3d 1069, 1073-74 (¶13) (Miss. Ct. App. 2016).

a "Motion for Leave to Proceed in Trial Court" in which he asked the Mississippi Supreme Court to remand his case to the circuit court so that he could pursue a new claim that his plea counsel provided ineffective assistance. The Supreme Court dismissed Smith's motion without prejudice, explaining that "[b]ecause [Smith] pleaded guilty and did not directly appeal his convictions and sentences, he [had to] file his motion for post-conviction relief as an original civil action in the trial court."

¶5. In March 2020, Smith filed a second PCR motion in the circuit court. In an affidavit, Smith alleged that during a phone call in November 2013, his plea counsel persuaded him to plead guilty by telling him that he would be paroled after serving only seven-and-a-half years of his fifty-year sentence. Smith also submitted an affidavit from his ex-wife, Crystal Perez, in which she stated that she overheard plea counsel make that statement. In addition, Smith alleged in his affidavit that he had told his first PCR attorney about his plea counsel's statement. Smith claimed that his convictions and sentences should be set aside because his plea counsel's erroneous advice constituted ineffective assistance of counsel.

¶6. The circuit court dismissed Smith's second PCR motion without holding a hearing. The court began by stating that the motion was barred by both the UPCCRA's successive-motions bar, Miss. Code Ann. § 99-39-23(6) (Rev. 2020), and the Act's three-year statute of limitations, Miss. Code Ann. § 99-39-5(2) (Rev. 2020). The court acknowledged that a claim alleging ineffective assistance of counsel may be excepted from those bars in some cases. But the court stated that Smith could not overcome those bars because he "merely relie[d] on his affidavit and unsupported allegations in his [motion]." This statement was incorrect

3

because, as noted above, Smith also submitted an affidavit from his ex-wife, Perez. The circuit court either overlooked or did not have a copy of Perez's affidavit. The circuit clerk later discovered that due to a clerical error, Perez's affidavit and the other exhibits to Smith's second PCR motion had not been uploaded to the Mississippi Electronic Courts system when they were filed. We directed the circuit clerk to supplement the record on appeal to include those exhibits. In its order denying Smith's motion, the circuit court also stated that Smith's claim was really "nothing more than an involuntary plea claim," that such claims do not survive the UPCCRA's successive-motions bar or statute of limitations, and that the transcript of Smith's plea hearing showed that he entered his plea voluntarily, intelligently, and knowingly. Smith filed a notice of appeal.

¶7. On appeal, Smith argues that the circuit court (1) erred by dismissing his second PCR motion based on the statute of limitations and successive-motions bar and (2) violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by dismissing his second PCR motion without holding an evidentiary hearing.

## ANALYSIS

**I. The circuit court properly dismissed Smith's second PCR motion based on the successive-motions bar and the statute of limitations.**

¶8. The circuit court properly dismissed Smith's PCR motion pursuant to the successive-motions bar and statute of limitations of the UPCCRA. The Act provides that an order denying relief on a PCR motion "shall be a bar to a second or successive [PCR] motion." Miss. Code Ann. § 99-39-23(6). There are certain statutory exceptions to the successive-motions bar, *id.*, but none apply in this case. In addition, the Act provides a three-year statute

4

of limitations for PCR motions. *Id.* § 99-39-5(2). In the case of a conviction following a guilty plea, the limitations period runs from the "entry of the judgment of conviction." *Id.* There are also statutory exceptions to the statute of limitations, *id.*, but none apply in this case. Smith's present PCR motion is barred by both the statutory successive-motions bar and the statute of limitations because it is his second such motion and because he filed it more than six years after his judgment of conviction was entered.

¶9. However, our analysis does not end with the language of the applicable statutes because our Supreme Court has declared that "errors affecting fundamental constitutional rights are [also] excepted from the procedural bars of the UPCCRA," including the successive-motions bar and the statute of limitations. *Rowland v. State*, 42 So. 3d 503, 506 (¶9) (Miss. 2010).[2] The scope of this exception has evolved over time, and the Supreme Court has yet to clearly explain the difference between "fundamental constitutional rights" and ordinary constitutional rights. The Court initially stated that the exception applied only to claims alleging a double jeopardy violation, an "illegal sentence," or a "denial of due process at sentencing." *Rowland v. State*, 98 So. 3d 1032, 1036 (¶6) (Miss. 2012), *overruled on other grounds by Carson v. State*, 212 So. 3d 22, 33 (¶38) (Miss. 2016). The Court said, "The deprivation of liberty—that unalienable, natural right inherent in all persons since time immemorial—without authority of law distinguishes these three excepted errors from all

---

[2] Some justices have criticized both the judicially created "fundamental rights exception" and the Court's characterization of "substantive enactments of the Legislature"—i.e., the successive-motions bar and the statute of limitations—as "procedural bars." *Williams v. State*, 222 So. 3d 265, 268-71 (¶¶8-15) (Miss. 2017) (Coleman, J., concurring); *see also Chapman v. State*, 250 So. 3d 429, 455 (¶170) (Miss. 2018) (Coleman, J., specially concurring).

5

other post-conviction claims." *Id.* (footnote omitted) (citing The Declaration of Independence para. 2 (1776)). However, the Court later held that this exception also applies to ex post facto violations and violations of the right not to be tried or convicted while incompetent. *Bell v. State*, 123 So. 3d 924, 924-25 (Miss. 2013) (en banc order); *Smith v. State*, 149 So. 3d 1027, 1031 (¶8) (Miss. 2014), *overruled on other grounds by Pitchford v. State*, 240 So. 3d 1061, 1070 (¶49) (Miss. 2017). Finally, the Court has stated that "*in exceptional circumstances*, an ineffective-assistance claim might be excepted from the procedural bars." *Conley v. State*, No. 2011-M-01006, 2020 WL 949240, at *1 (Miss. Feb. 26, 2020) (order) (emphasis added) (citing *Chapman v. State*, 167 So. 3d 1170, 1174-75 (¶¶12-13) (Miss. 2015) (holding that the movant's ineffective assistance claim was excepted from the successive-motions bar and the statute of limitations based on a confluence of "extraordinary circumstances"); *Bevill v. State*, 669 So. 2d 14, 17 (Miss. 1996); *Brown v. State*, 187 So. 3d 667, 671 (Miss. Ct. App. 2016)).

¶10. Smith argues that his ineffective assistance claim fits within the "fundamental rights" exception to the successive-motions bar and statute of limitations. We disagree.

¶11. Recently, in *Kelly v. State*, 306 So. 3d 776 (Miss. Ct. App. 2020), *cert. denied*, 308 So. 3d 440 (Miss. 2020), this Court held that a virtually identical ineffective assistance claim was barred by the UPCCRA's statute of limitations. *Id.* at 778-79 (¶¶9-12). In his PCR motion, Kelly alleged that he had received ineffective assistance of counsel because his plea counsel erroneously advised him that he would be eligible for parole after he had served ten years of his sentence for armed robbery. *Id.* at 777 (¶4). In support of his claim, Kelly

submitted not only his own affidavit but also an affidavit from his plea counsel in which counsel admitted that he had given Kelly erroneous advice regarding his parole eligibility. *Id.* at (¶5). On appeal, this Court held that Kelly's ineffective assistance claim was barred by the statute of limitations because he failed to establish "any 'extraordinary circumstance' that would explain his failure to assert his PCR claims within the statutory three-year time limitation." *Id.* at 779 (¶9). Although the affidavit from Kelly's plea counsel addressed "the merits of [Kelly's] claim, nothing in that affidavit explain[ed] Kelly's nearly six-year delay in asserting the claim." *Id.* at (¶10). That is, corroborating evidence for a claim is not the equivalent of exceptional or extraordinary circumstances sufficient to overcome the UPCCRA's successive-motions bar or statute of limitations.

¶12. There is no meaningful or material distinction between *Kelly* and this case. Indeed, the facts of this case are less compelling than *Kelly* because Smith relies on the affidavit of his ex-wife rather than an admission from his former attorney. More important, like Kelly, Smith fails to justify his six-year delay in asserting his claim, and "the record . . . reveals no reason why [Smith] was prevented from timely asserting his claim." *Id.* Smith does state that he "advised" the lawyer he hired to file his first PCR motion (Cockerham) about his plea counsel's alleged erroneous advice. However, Smith does not allege that Cockerham ever misled him or acted in a manner contrary to his instructions.[3] Accordingly, Smith is bound

---

[3] Smith acknowledges in his affidavit that he "hired . . . Cockerham . . . to file a [PCR motion]." In addition, after his first PCR motion was filed, Smith signed and filed a notarized statement in which he "acknowledged that he [had] signed and delivered the [PCR motion] as his free and voluntary act and deed and that the matters and facts stated therein [were] true and correct as therein stated."

7

by his first PCR motion and the final judgment denying that motion. *See, e.g.*, *Hughes v. State*, 807 So. 2d 426, 431 (¶11) (Miss. 2001) ("This Court has held that a party is bound by the acts of his attorney." (quotation marks omitted)). In addition, Smith does not identify any other circumstance that prevented him from asserting an ineffective assistance claim in his first PCR motion or within the statutory limitations period.

¶13. Moreover, there is nothing exceptional or extraordinary about the substance of Smith's claim. Rather, his allegation that plea counsel misadvised him about his eligibility for parole and early release is one of the most common—i.e., *ordinary*—claims made in PCR motions. Nonetheless, Smith waited more than six years to pursue that claim in his second PCR motion. Because Smith's ineffective assistance claim does not involve any exceptional or extraordinary circumstances, the circuit court correctly concluded that the claim is barred by the UPCCRA's successive-motions bar and statute of limitations.[4]

## II. The circuit court did not violate Smith's right to equal protection by dismissing his PCR claim without holding a hearing.

¶14. Smith also argues that the circuit court violated his constitutional right to equal protection of the laws by dismissing his PCR motion without an evidentiary hearing. Smith relies on *Lackaye v. State*, 166 So. 3d 560 (Miss. Ct. App. 2015), in which this Court held that a prisoner was entitled to an evidentiary hearing on his claim that his plea counsel had

---

[4] As noted above, the circuit court's order dismissing Smith's PCR motion stated that Smith relied solely on his own affidavit. This was incorrect because Smith also submitted an affidavit from his ex-wife. However, "we may affirm the dismissal of a PCR motion even if the circuit court dismissed the motion for the wrong reason." *Easterling v. State*, 283 So. 3d 1198, 1200 (¶4) (Miss. Ct. App. 2019) (citing *Carey v. State*, 271 So. 3d 795, 796 n.2 (Miss. Ct. App. 2019)), *cert. denied*, 283 So. 3d 735 (Miss. 2019).

misadvised him regarding his eligibility for parole and the consequences of pleading guilty as a subsequent drug offender. *See id.* at 562-65 (¶¶6-18). Smith argues that he is similarly situated and that the summary dismissal of his PCR motion without an evidentiary hearing violates equal protection.

¶15.    Smith's claim is without merit because he fails to acknowledge or address critical differences between Lackaye's claim and his claim. Lackaye asserted his claim in his first PCR motion and within the statute of limitations, *see id.* at 561-62 (¶¶2-3), whereas Smith asserted his claim in his second PCR motion more than six years after he pled guilty. "The Equal Protection Clause directs that all persons *similarly circumstanced* shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (emphasis added) (quotation marks omitted). It "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Id.* (quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940)). "Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). For the reasons just stated, Lackaye and Smith are not "similarly circumstanced." Rather, Smith's case is "different in fact" and may be treated "accordingly." A state does not violate the Equal Protection Clause by enforcing a post-conviction statute of limitations that applies equally to all defendants. *Phillips v. Ferguson*, 182 F.3d 769, 773-74 (10th Cir. 1999). Accordingly, Smith's equal protection argument is also without merit.

## CONCLUSION

¶16.    Smith's present PCR motion is barred by the successive-motions bar and statute of

limitations of the UPCCRA. Accordingly, the circuit court did not err by dismissing Smith's motion for that reason.

¶17. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND WESTBROOKS, J. McCARTY, J., NOT PARTICIPATING.**

**McDONALD, J., DISSENTING:**

¶18. I respectfully dissent from the majority's holding because, in my opinion, Smith's fundamental-rights claims of ineffective assistance of counsel and violation of his due process rights qualify as exceptions to the statute of limitations and successive-motions bar. Accordingly, I would reverse the order and remand Smith's PCR motion for a hearing before the circuit court.

¶19. To understand my position, it is important that I detail some critical facts about Smith's indictment, his plea hearing, and the circuit court's limited summary review of his PCR motions.

¶20. On August 15, 2013, Smith was indicted in the Rankin County Circuit Court on five counts of the sale of cocaine in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2013). Because of a prior conviction in 1999 for possession of a controlled substance, Smith was also charged as a "subsequent offender" under Mississippi Code Annotated section 41-29-147.[5] As a "subsequent drug offender" under this statute, Smith faced a

_____

[5] Mississippi Code Annotated section 41-29-147 (Rev. 2013) provided that any person convicted of a second or subsequent offense under this article may

10

penalty of twice the maximum sentence for his cocaine-sale charges, but the circuit court could sentence him to serve less time. Even though he had two prior felonies, Smith was not indicted under the habitual offender statute, Mississippi Code Annotated section 99-19-81, which provided that third-time-felony offenders be sentenced to the maximum provided by statute and were ineligible for parole.[6] Thus, his indictment gave Smith no notice that he would not be eligible for parole—only that he could receive twice the maximum sentence as a subsequent drug offender.

¶21. Because Smith potentially faced sixty years in prison, his attorney began plea negotiations. According to an affidavit Smith attached to his current PCR motion, Smith's attorney ultimately told him that he would be eligible for parole in seven and a half years even if he may be sentenced to fifty or sixty years. If his attorney said this, then he was apparently unaware of the separate parole statute, Mississippi Code Annotated section 47-7-3(1)(h) (Rev. 2011), which at that time provided that persons charged with felonies with

---

be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both . . . .

[6] In 2013, Mississippi Code Annotated section 99-19-81 (Rev. 2007) (habitual offender statute) provided:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

enhanced penalties were not eligible for parole.[7]  Relying on the misinformation from his

attorney, Smith, who was age forty-nine, decided to plead guilty.

¶22.    In addition to the misinformation from his attorney, neither the plea petition Smith

signed nor the circuit court's discussion at his plea hearing advised Smith that he was, in fact,

ineligible for parole.  Paragraph eleven of the petition merely states, "I understand that *if* I

am sentenced as an *habitual criminal*, I will not be eligible for parole." (Emphasis added).[8]

Later, the circuit court judge indicated that Smith was not being sentenced as a habitual

criminal at that point, but that in the future he could be, saying,

> Q.    Okay. Do you understand that *if you commit any crimes in the future,*

---

[7] The version of section 47-7-3(1)(h) in effect in 2013 read:

> No person shall be eligible for parole who is convicted or whose suspended sentence is revoked after June 30, 1995, except that an offender convicted of only nonviolent crimes after June 30, 1995, may be eligible for parole if the offender meets the requirements in subsection (1) and this paragraph . . . . For purposes of this paragraph, *"nonviolent crime" means a felony other than homicide, robbery, manslaughter, sex crimes, arson, burglary of an occupied dwelling, aggravated assault, kidnapping, felonious abuse of vulnerable adults,* **felonies with enhanced penalties**, the sale or manufacture of a controlled substance under the Uniform Controlled Substances Law. . . . An offender convicted of a violation under Section 41-29-139(a), not exceeding the amounts specified under Section 41-29-139(b), may be eligible for parole. In addition, an offender incarcerated for committing the crime of possession of a controlled substance under the Uniform Controlled Substances Law after July 1, 1995, shall be eligible for parole.

(Emphasis added).

[8] Paragraph seventeen of the plea petition lists Smiths two prior felonies: possession of cocaine  and dog fighting.  But Smith had not been indicted as a "habitual offender" under section 99-18-81, and the plea petition does not say that Smith was pleading guilty as a "habitual offender" or that he would be sentenced as a "habitual offender" without eligibility for parole.

*you are subject to being charged, tried, convicted, and sentenced as a habitual offender, which will effect the length of sentence you would be required to serve, do you not?*

A. Yes, sir.

Q. Do you have any questions about any of that?

A. No, sir.

(Emphasis added). There was no mention that Smith would not be eligible for parole if he pleaded guilty to his current charges. The circuit court then asked for Smith's pleas to the various counts with the enhancement as a subsequent drug offender, to which Smith pleaded "guilty." The circuit court proceeded to sentence Smith to sixty years in custody, but after serving fifty years he could be released and placed on post-release supervision. Smith's attorney raised no objection.

¶23. On November 17, 2016, Smith timely filed his first motion for post-conviction relief, claiming that the sentence violated the state and federal constitutional prohibitions of cruel and unusual punishment, but the motion did not include a claim of ineffective assistance of counsel. On January 12, 2018, the Rankin County Circuit Court summarily dismissed Smith's PCR motion. Smith appealed, and on July 16, 2019, we affirmed the circuit court's ruling because he had not been sentenced in excess of the statutory penalty. *See Smith v. State*, 291 So. 3d 1, 8 (¶20) (Miss. Ct. App. 2019). Thereafter, Smith filed a motion in the supreme court for leave to proceed in the circuit court with a new PCR motion alleging ineffective assistance of counsel. On March 4, 2020, the supreme court directed him to file the PCR motion in the circuit court as an original action. Smith did so, but the circuit court

dismissed Smith's second PCR motion, which is now before us on appeal.

¶24.    In his current PCR motion, Smith raises his ineffective-assistance-of-counsel claim based on the misinformation given to him by his plea counsel.  To support his motion, Smith attached his affidavit in which he gave specifics of what his attorney told him about his eligibility for parole.[9]  Smith also said that he told both the attorney he had hired in March 2015 to file his first PCR motion and the attorney who filed his current PCR motion about his plea counsel's comments.

¶25.    In addition to his affidavit, Smith submitted an affidavit from his ex-wife, Crystal. In it, she confirmed Smith's conversation with his plea counsel.  She remembered Smith's attorney telling them to put the phone on speaker, and she heard the plea offer of fifty years. She thought it was too much.  But then she heard the attorney advise Smith that "if you take the fifty (50) years you will not do more than seven and one-half years (7-1/2) [and] with good time and earned time you will be paroled and not do more than seven and one-half years (7-1/2)."  They then drove to Smith's attorney's office, where Smith signed the "papers," and they left.

¶26.    There is no doubt that both Smith and his ex-wife's affidavits were filed to support his second PCR motion.  Smith refers to them in his motion, along with other exhibits

_____

[9] Smith stated that he was sitting on his now-deceased mother's porch when his plea counsel called him.  Smith put the phone on speaker mode, and Smith's former wife, Crystal, and his mother, who were both present, heard Smith's conversation with the attorney who said that the State was now offering fifty years.  The attorney told Smith, "You will not do more than seven and one-half years (7-1/2) with good time and [with] earned time you will be paroled and do no more than seven and one half years (7-1/2)."  Smith accepted the offer, and he and Crystal drove to Smith's attorney's office where Smith signed the plea petition.

including his employment agreement with his plea attorney, payments made to his attorney, Smith's guilty plea petition, and the plea hearing transcript. The circuit court convened no hearing on the matter, and on May 18, 2020, the court summarily dismissed Smith's motion, finding it to be time-barred. The court also found that Smith's claim of ineffective assistance of counsel lacked merit because it was based solely on Smith's own affidavit and unsupported allegations. *Id*. at 779 (¶10). Apparently the circuit court failed to review Smith's ex-wife's affidavit.

¶27. I agree that Smith's claims do not fall into any of the statutory exceptions to the three-year post-sentence deadline for filing PCR motions.[10] However, I do believe that Smith's claims of ineffective assistance of counsel and denial of due process have an arguable basis in these facts, *McCoy v. State*, No. 2017-M-01735, 2019 WL 1578752, at *1 (Miss. Mar. 26, 2019) (order), that raise potential violations of his fundamental constitutional rights such that the PCR motion survives the procedural bars.

     *A.     Ineffective-Assistance-of-Counsel Claim*

¶28. As the majority notes, claims of ineffective assistance of counsel can survive the UPCCRA's three-year or successive-motions procedural bars. "A cognizable ineffective-assistance-of-counsel claim exists where the guilty plea is rendered involuntary by counsel's conduct." *Hill v. State*, 60 So. 3d 824, 829 (¶14) (Miss. Ct. App. 2011). To

---

[10] These include: (1) an intervening decision of either the United States Supreme Court or the Mississippi Supreme Court that would have adversely affected the outcome; (2) discovery of new evidence not reasonably discoverable at trial; or (3) an expired sentence, or an unlawful revocation of parole, probation, or conditional release. Miss. Code Ann. § 99-39-5(2)(a)(i) & (b) (Rev. 2020).

prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness; and [(2)] that but for his attorney's errors, there is reasonable probability . . . [the outcome] of the proceeding would have been different." *Hannah v. State*, 943 So. 2d 20, 24 (¶6) (Miss. 2006). In the context of a guilty plea, a defendant "must show there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

¶29. An attorney's failure to properly advise a defendant about his parole eligibility can constitute ineffective representation. In *Garner v. State*, 928 So. 2d 911, 915 (¶14) (Miss. Ct. App. 2006), Garner did not contest his guilt on appeal, but he argued that his attorney erroneously advised him regarding his eligibility for parole. After our review of the facts, we found that "any advice by counsel that Garner would be eligible for parole was incorrect and constitutes deficient performance." *Id.* (citing *Thomas v. State*, 881 So. 2d 912, 916 (¶16) (Miss. Ct. App. 2004)). In addition, "if his attorney improperly advised him of his eligibility for parole, Garner is entitled to a hearing to investigate his claim that he would not have pled guilty but for the incorrect advice." *Id.*

¶30. In this case, in my opinion, Smith provided sufficient evidence to support his claim for ineffective assistance of counsel with the affidavits he submitted about his attorney's misinformation concerning his parole eligibility to at least warrant a hearing. We have held as much in other cases, including *Sylvester v. State*, 113 So. 3d 618 (Miss. Ct. App. 2013). There, the defendant provided his own affidavit, as well as an affidavit from his sister,

16

alleging that he was misinformed as to his eligibility for trusty earned time. *Id.* at 623-24 (¶20). We noted that the issue of parole was not addressed during Sylvester's plea colloquy and that the alleged misinformation went uncorrected. *Id.* at 624 (¶20). We said that "when the movant attaches an affidavit of another who supports the allegation, the trial court may be required to conduct an evidentiary hearing." *Id.* at 621 (¶10). Further, in *Kennedy v. State*, 287 So. 3d 258, 266 (¶25) (Miss. Ct. App. 2019), *cert. denied*, 279 So. 3d 1087 (Miss. 2019), we said:

> This Court has held that a defendant has provided sufficient evidence showing that he was entitled to an evidentiary hearing on whether his plea was knowingly, intelligently, and voluntarily in cases where: the defendant alleged that he was given erroneous advice by his attorney as to his parole eligibility, the alleged misinformation went uncorrected (such as the failure to address the issue of parole during the plea hearing), and the defendant provided evidence other than his own sworn statement (such as a sworn affidavit from a third party) in support of his allegation.

¶31. Here, Smith's affidavits assert that Smith's plea attorney gave him misinformation about his parole eligibility, and a close read of Smith's plea hearing transcript reveals that this misinformation was never dispelled. Smith was never told that he would *not* be eligible for parole. Moreover, the sentencing court's questioning could be understood as saying that restrictions on the amount of time Smith might serve were matters to be considered in the future.

¶32. We have said that interrogation by the court at the time of sentencing is "the most significant evidence of all." *Hill*, 60 So. 3d at 828 (¶12) (quoting *Gardner v. State*, 531 So. 2d 805, 809-10 (Miss. 1988)). What the court explains to a defendant despite the advice or instructions a defendant may have been given by his attorney is key to the determination of

17

the voluntariness of a plea. *Id.* For example, in *Thinnes v. State*, 196 So. 3d 204, 209 (¶20) (Miss. Ct. App. 2016), the circuit court asked Thinnes whether he understood that no one could guarantee him parole, probation, or early release. We noted that

> the circuit court's warning that no one could guarantee Thinnes parole failed to directly address Thinnes's parole ineligibility. While the circuit court's question reflected that no guarantee of parole, probation, or early release existed, the question also appeared to indicate that the possibility for such treatment existed.

*Id.* at 209-10 (¶21).

¶33. In its ruling on Smith's current PCR motion, the circuit court concluded that Smith's plea was voluntary. But in *Moore v. State*, 248 So. 3d 845 (Miss. Ct. App. 2017), we noted that "a plea is involuntary if a defendant is affirmatively *misinformed* regarding the possibility of parole and pleads guilty in reliance on the misinformation." *Id.* at 852 (¶17) (emphasis added); *see also Fairley v. State*, 834 So. 2d 704, 706 (¶8) (Miss. 2003) ("[F]ailure to mention something concerning parole eligibility may be no problem, but erroneous information concerning parole and sentencing at least entitles the petitioner to an evidentiary hearing on whether he relied on the erroneous information."). In this case, the record reflects that the sentencing court did not address Smith's eligibility for parole.

¶34. Nonetheless, the majority says that Smith's PCR motion is time-barred and subject to the successive-motions, citing *Kelly v. State*, 306 So. 3d 776, 777 (¶5) (Miss. Ct. App. 2020). The majority says that the facts in *Kelly* were stronger than Smith's case because Kelly's own attorney signed an affidavit saying he had misinformed Kelly about his eligibility for parole. But the focus in *Kelly* was not on the misinformation that the attorney gave; the focus was

18

lack of evidence to explain why Kelly waited six years to file his PCR motion. Apparently Kelly filed no other affidavit to address why his motion was not time-barred.[11] *Id*. at (¶¶2-3). We said, "While Kelly supports his ineffective-assistance-of-counsel claim with an affidavit from his prior counsel that speaks to the merits of his claim, nothing in that affidavit explains Kelly's nearly six-year delay in asserting the claim. Our review of the record likewise reveals no reason why Kelly was prevented from timely asserting his claim." *Id*. at 779 (¶10). Here, however, Smith says in his affidavit that he told the attorney handling his first PCR motion about his plea counsel's misinformation, implying that Smith contends he was not at fault that the claim was not made then. Smith did not sign that first PCR motion, so it is unclear whether he knew that his first attorney had failed to include the ineffective-assistance-of-counsel issue.[12] After the dismissal of his first PCR, Smith immediately petitioned the supreme court for leave to file another motion to raise the ineffective-assistance-of-counsel claim. So, unlike *Kelly*, Smith did put something in the record to explain why his claim was

---

[11] Kelly pleaded guilty in 2010 and did not file his PCR motion until 2016, long after the three-year statutory deadline. *Id*. at (¶¶2-3).

[12] Although Smith signed a verification that was filed in the first PCR motion, we should not assume that Smith therefore knew that his first PCR motion did not raise the claim of ineffective counsel. The first PCR motion itself was signed only by his attorney on November 17, 2016, and filed that same day. Smith did not sign the verification until December 14, 2016, and that single-page document was filed on December 17, 2016. We do not know whether Smith had the motion to review at the time he signed the attestation or not. Even if he had, as a layman, he may have believed that what he told his attorney about his prior counsel's misinformation was a part of the legal arguments that the motion contained. Smith stated under oath that he told his attorney about his plea attorney's misinformation. Rather than mechanically dismissing Smith's PCR motion by saying that he is bound by what his attorney did or did not write, it would be more prudent for this Court to have the circuit court hear testimony on that matter and make a factual finding. The circuit court can then determine if Smith attempted to raise the issue in a timely manner.

19

not included in his first, timely filed PCR motion.

¶35. Smith's facts also differ from *Kelly*'s in that the circuit court in *Kelly* acknowledged and considered the affidavits that Kelly filed. *Id*. at 777 (¶5). Here, the circuit court overlooked Smith's ex-wife's affidavit and summarily dismissed Smith's motion for lack of support. In my opinion, *Kelly* is distinguishable.

¶36. Almost thirty years ago, the Mississippi Supreme Court held that a defendant who claimed that he accepted a plea bargain of fifteen years in prison because he was told by his attorney that he would be eligible for parole after serving one-fourth of his sentence was at least entitled to a hearing on the matter. *Alexander v. State*, 605 So. 2d 1170, 1173 (Miss. 1992). I feel Smith should be afforded the same relief.

   B.   *Due Process Claim*

¶37. Admittedly, a PCR motion may be summarily dismissed if a trial court, after its review of the motion and *exhibits*, concludes that the petitioner is plainly not entitled to any relief. *Hill*, 60 So. 3d at 826 (¶3) (emphasis added) (quoting Miss. Code Ann. § 99-39-11(2) (Supp. 2010)). But in this case, the circuit court summarily denied Smith a hearing on his PCR motion without reviewing all the evidence Smith submitted. When the circuit court said that "[the] petitioner merely relies on his own affidavit and unsupported allegations in his brief, which the Mississippi Supreme Court has found insufficient to establish an ineffective assistance of counsel claim," the circuit court had obviously overlooked Smith's ex-wife's supporting affidavit. Confirming this conclusion is the circuit court's citation of *White v. State*, 59 So. 3d 633 (Miss. Ct. App. 2011), as support. There, White filed only his own

affidavit and nothing else. *Id*. at 636 (¶12). In turn, *White* referred to *Vielee v. State*, 653 So. 2d 920, 922 (Miss. 1995), where the Mississippi Supreme Court said, "This Court has implicitly recognized in the post-conviction relief context that where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit." But unlike *White* and *Vielee*, here Smith provided not only his affidavit, but also the affidavit of a third party—his ex-wife—to support his allegation of misinformation by his plea counsel.

¶38. Again, we have held that a defendant is entitled to a hearing on his PCR motion when he claims that he pleaded guilty because his attorney had told him that he would be eligible for parole when, in fact, he was not. In *Thomas v. State*, 881 So. 2d 912 (Miss. Ct. App. 2004), we said:

> Our supreme court has held that a defendant who alleges that his plea is not voluntary because of his reliance on his attorney's faulty advice regarding the possibility of parole, is entitled to an evidentiary hearing on the question of voluntariness." *Stewart v. State*, 845 So. 2d 744, 747 (¶10) (Miss. Ct. App. 2003) (citing *Washington v. State*, 620 So. 2d 966, 967 (Miss.1993)). Thomas made exactly these allegations in his PCR motion, and his allegations stand uncontradicted by the record. Therefore, Thomas is entitled to an evidentiary hearing.

*Id*. at 917 (¶14). Further, this court found:

> In his PCR motion, Thomas states that, if he had known he was not eligible for parole, he would have opted for a trial. This contention is grounds for showing prejudice under *Strickland* unless the record reveals that Thomas received correct advice from some other source. The plea hearing transcript and other evidence submitted in this case do not show that Thomas ever received correct information about his parole eligibility. Therefore, Thomas has successfully alleged that he received ineffective assistance of counsel due to his attorney's incorrect advice about parole eligibility. He is entitled to an evidentiary hearing to explore the merits of this claim.

*Id*. at 917-18 (¶16).

21

¶39. *Lackaye v. State*, 166 So. 3d 560 (Miss. Ct. App. 2015), is applicable to Smith's facts and supports a remand of this case for a hearing on Smith's PCR motion. In that case, we held that the defendant had presented sufficient evidence to warrant a hearing on his PCR claim of ineffective assistance of counsel because Lackaye had attached several supporting affidavits. *Id*. at 565 (¶18). Although Lackaye may have provided more than one supporting affidavit, in other cases we have found a single supporting affidavit is sufficient to merit a hearing on the claim. *See Jackson v. State*, 178 So. 3d 807, 812 (¶18) (Miss Ct. App. 2014) (discussing a defendant who provided his own affidavit in support of his PCR motion, as well as an affidavit from his wife, stating that the defendant's attorney told him the enhanced sentence would not prevent him from being eligible for parole); *Thomas v. State*, 881 So. 2d 912, 914 (¶4) (Miss. Ct. App. 2004) (defendant submitting his own affidavit and memorandum of law); *Readus v. State*, 837 So. 2d 209, 211 (¶5) (Miss. Ct. App. 2003) (defendant filing his own affidavit and one from his mother).

¶40. The majority says *Lackaye* does not apply because Smith is not "similarly situated" to Lackaye, who filed his claim of ineffective assistance of counsel in his first PCR motion within the three-year statute of limitations, while Smith filed his second PCR motion six years after his guilty verdict and sentence. Thus, not being similarly situated to Lackaye, Smith has no equal protection claim. However, in his affidavit, Smith did state under oath that he attempted to raise his claim in a timely fashion because he told his first PCR attorney about his plea counsel's misinformation. His affidavit, in my opinion, raises a dispute of fact that is not for us, but for the circuit court, to resolve. In this case, this information, coupled

22

with the circuit court's failure to acknowledge and review Smith's supporting affidavit, should warrant a reversal and hearing on Smith's fundamental-rights claim. We have said that we will reverse a circuit court's dismissal of a PCR motion if its factual findings are clearly erroneous. *Murphy v. State*, 311 So. 3d 726, 729 (¶19) (Miss. Ct. App. 2021). Here, the circuit court's finding that Smith's claims were based solely on his affidavit was clearly erroneous and warrants reversal and remand for a hearing on all dispositive issues.

### C. *Extraordinary Circumstances*

¶41. The majority points out that the time-bar and successive-motions bar can only be overcome by a violation of fundamental rights in cases of "extraordinary circumstances." The majority further finds that Smith has raised only "ordinary circumstances," not "extraordinary circumstances." I disagree. Here Smith was forty-nine years old when he was sentenced to fifty years without eligibility for parole. He is literally serving a life imprisonment sentence. It is doubtful that he voluntarily chose to die in prison and unreasonable to assume Smith agreed to this sentence without some incentive to do so. He had nothing to lose by going to trial, as his sentence would have been nearly the same. "But for" the misinformation given to him by his plea counsel, his choice would most likely have been different.

¶42. Moreover, there have been legislative changes to the parole statute that even the majority concedes apply to Smith's situation. The amendment to section 47-7-3(1)(f) became effective in 2018, was thereafter amended twice, and now, renumbered to be section 47-7-3(1)(h)(i)(3) (Supp. 2021), permits parole eligibility for non-violent subsequent drug

offenders.  The Mississippi Supreme Court confirmed the 2018 change in *Parker v. Mallett*, 298 So. 3d 994 (Miss. 2020).  In that case, Parker was charged with cocaine possession and sentenced as a subsequent drug offender and a habitual offender in 2006 because of two prior sale-of-cocaine convictions.  *Id*. at 996 (¶¶3-4).  When he became eligible for parole on his prior sale-of-cocaine convictions, Parker sought a parole date on his cocaine possession charge as well.  *Id.* at (¶2).  The Mississippi Department of Corrections (MDOC) determined that he was not eligible for parole on the possession charge because he had been sentenced as a habitual offender.  *Id*.  Parker appealed, and the circuit court agreed with the MDOC. *Id*.  On appeal, the supreme court noted that when Parker was sentenced as a subsequent drug offender in 2006, he was ineligible for parole under the parole eligibility statute, section 47-7-3(1)(f), as written.  *Id*. at 998 (¶9).  But, the Court noted, the Legislature has now removed that bar, saying,

> On July 1, 2018, House Bill 387 (the Act) became law. See H.B. 387, Reg. Sess., 2018 Miss. Laws ch. 416, §5. Among its other provisions, the Act amended Mississippi Code Section 47-7-3(1)(f).  Before the Act, the Section stated that defendants convicted of "felonies with enhanced penalties" were not eligible for parole. Miss. Code Ann. § 47-7-3(1)(f) (Rev. 2015).  But the revised statute now has an exception for penalty enhancements under Section 41-29-147. See Miss. Code Ann. § 47-7-3(1)(f) (Supp. 2019). The Act specifically provides that "an offender who receives an enhanced penalty under the provisions of Section 41-29-147 for such possession, shall be eligible for parole." *Id*.

> Passage of the Act—and its effect on subsequent offenders—prompted Parker to seek a parole date through the ARP process. *Parker is correct that his subsequent offender status no longer precludes MDOC from setting a parole date.*

*Id*. at 998 (¶¶10-11) (emphasis added).  However, the supreme court continued that the

amendment did not remove the parole prohibition for those sentenced as habitual offenders. *Id*. at (¶11). Accordingly, because Parker was sentenced as a habitual offender as well, he was properly denied a parole date. *Id.*

¶43. To summarize, the gravity of Smith's sentence and the fact that section 47-7-3(1)(h)(i)(3) now permits Smith to be eligible for parole constitute "extraordinary circumstances" entitling Smith to a hearing on his PCR motion.

## Conclusion

¶44. In my opinion, Smith's PCR motion raised a fundamental-rights violation in the context of extraordinary circumstances that is excepted from the time-bar and successive-motions bar. Smith provided sufficient supporting evidence to warrant a hearing on his claim of ineffective assistance of counsel. Further, the circuit court's summary dismissal was in error because it failed to consider Smith's ex-wife's supporting affidavit.

**BARNES, C.J., AND WESTBROOKS, J., JOIN THIS OPINION.**